63049. MIXON v. MIXON et al.

BIRDSONG, Judge.
Summary Judgment. In 1974 James N. Mixon borrowed $10,000 from Terminal Transport Employees Federal Credit Union and pledged his home (by second mortgage) as security. In 1976 James Mixon and Nita J. Mixon were divorced. In that divorce decree, Nita Mixon was given exclusive use and possession of the home but the title was left in the name of James Mixon. The decree also gave Nita Mixon the right to determine when the sale of the house was to occur except that sale was required not later than two years after the youngest child reached the age of 18. The decree did not mention who was to make the mortgage payments. It is undisputed that Nita Mixon made all payments on the first mortgage after the award of possession of the home to her. In 1977 James Mixon filed a motion for new trial but voluntarily dismissed the same. James Mixon was an employee of Terminal Transport and because of his status was enabled to make the loan from the company credit union. Also as an employee, he was able to make mortgage payments on the second mortgage by payroll deductions.

After the dismissal of his motion for new trial, James Mixon stopped payroll deductions on the second mortgage and made no further payments. The credit union notified James Mixon that he was in default and made demand for payment. When that payment was not forthcoming, the credit union accelerated the entire unpaid balance (approximately $7,000). Nita Mixon sought to have the credit union proceed against James Mixon to collect the indebtedness but the credit union declined to do so. Then Nita Mixon sought to assume the payments herself. The credit union declined to allow her to do so on the ground that she was not an eligible member of the credit union. The credit union foreclosed on the house, and Nita Mixon's sister and brother-in-law bought the house on the foreclosure. Thereafter, they quitclaimed the house to Nita Mixon so that she has not experienced any loss or use of possession of the house. Nita Mixon brought suit against James Mixon and the credit union seeking damages for their alleged corrupt agreement to force the sale of the house at a time selected by James Mixon, in direct violation of

the divorce decree placing that option in Nita Mixon. Upon their motions, the trial court granted summary judgment to the credit union and a motion to dismiss the action in favor of James Mixon. Nita Mixon brings this appeal asserting error in the grant of the two motions. *Held:*

The arguments of appellant have more acceptance for their ingenuity than for their merit. In substance, appellant Nita Mixon argues that by the divorce decree she was given full and exclusive use of the home. At the ultimate sale of the home, she was to split the remaining equity with her ex-husband half and half. This she contends means that he was to pay the mortgage payments for if she was to pay them and then ultimately have to split the equity in substance she would be paying him alimony, because half of the equity in each mortgage payment became his by the decree. In 1976 when this decree was entered, a wife could not be compelled to pay a husband alimony. Secondly, appellant argues that the evidence shows a corrupt agreement (i.e., a conspiracy) between James Mixon and the credit union to violate the divorce decree. Her argument proceeds on the theory that by verbal agreements the credit union agreed to allow James Mixon to terminate his payroll deductions and thereafter not make further mortgage payments. The credit union would proceed against the home and would not seek repayment of the indebtedness from James Mixon nor allow Nita Mixon to make the payments. The combination of these events allowed James Mixon to determine the time of the sale of the home, all in violation of the divorce decree.

We are not persuaded by these arguments. In the first place, as we read the divorce decree, we accept it to mean that where a *voluntary* sale of the house occurs, the time of that sale would be set by Nita Mixon. To accept appellant's argument would mean that a good faith creditor could not proceed to foreclose upon its collateral unless Nita Mixon consented thereto but would be limited to an action against its debtor, regardless of the debtor's financial position to respond to an adverse judgment. We do not dispute appellant's evaluation of the divorce court's intent in its decree, but conclude that if a forced sale were imminent because her ex-husband became delinquent in payments, she could have proceeded in a contempt proceeding. Even assuming that the divorce decree may have contemplated that Nita Mixon would live rent-free in the home, we must conclude that the court intended Nita Mixon to have the property as part of her support but that she would have it subject to the debt on it. *Moon v. Moon,* 222 Ga. 650, 653 (151 SE2d 714). Under this decree, neither party is obligated to make payments. It follows that if the payments were not paid, then Nita Mixon stood to lose her

right of possession and James Mixon would lose his equity. *Ramsey v. Ramsey,* 231 Ga. 334, 338 (201 SE2d 429). In point of fact, Nita Mixon did not appeal the divorce decree nor seek a clarification of the decree but as hereinbefore indicated, made voluntarily all payments on the first mortgage after the divorce.

Assuming that appellant has created a question of fact as to the existence of a conspiracy between James Mixon and the credit union, this does not create any right to recover per se. Georgia law makes clear that a right of recovery arises not out of an alleged conspiracy but from a tort committed against the plaintiff and the damages wrongfully emanating therefrom. *Lambert v. Ga. Power Co.,* 181 Ga. 624, 628 (183 SE 814); *Higginbotham v. Harden,* 137 Ga. App. 143, 144 (223 SE2d 156). It is conceded by appellant that under the terms of the security deed and the existing law of this state, the holder of the security deed had the option to proceed against the debtor first and then against the collateral for any deficiency or directly against the collateral without first seeking payment from the debtor. *Oliver v. Slack,* 192 Ga. 7 (14 SE2d 593); *Gentry v. Hibbler-Barnes Co.,* 113 Ga. App. 1, 2 (147 SE2d 31). Thus we conclude that the credit union did what it had a right to do. Moreover, the credit union offered evidence without contradiction that it had no right to compel James Mixon to continue making payments of any kind on the second mortgage and even if he did so, the decision to make those payments by a payroll deduction or otherwise lay exclusively with James Mixon. Thus in this regard also we conclude that James Mixon did what he had the right to do when he stopped payroll deductions and made no further payments on the mortgage. "Where damage results from an act which, if done by one alone, would not afford ground of action, the like act would not be rendered actionable because done by several in pursuance of a conspiracy." *Woodruff v. Hughes,* 2 Ga. App. 361, 364 (58 SE 551); see *Camp v. Aetna Life Ins. Co.,* 170 Ga. 46 (152 SE 41).

We conclude that the trial court did not err in granting summary judgment to Terminal Transport Employees Federal Credit Union nor in dismissing the complaint as against James Mixon.

*Judgment affirmed. Shulman, P. J., and Sognier, J., concur.*

Decided February 24, 1982 —
Rehearing denied March 15, 1982 —

*Fletcher Thompson,* for appellant.

*Ted B. Spears, Jerry B. Blackstock, Karen Wildau, Charles W. Smegal,* for appellees.