A92A0757, A92A0758. RAY v. ATKINS; and vice versa.
(421 SE2d 317)

ANDREWS, Judge.

Alice Atkins sued Patricia Ray, Ronald Graham, and Donna Gra-

ham (her sister, brother, and sister-in-law, respectively) in Catoosa County claiming that Ray and the Grahams fraudulently conspired to foreclose on a first priority debt deed to extinguish her rights in certain real properly located in Catoosa County, and seeking to set aside the foreclosure deed. This suit, naming Ray as a co-defendant, was consolidated for trial before a jury with a prior suit in which Atkins sued only the Grahams to seek a determination of her interest in the same property. Based on the jury verdict, judgment was entered determining Atkins' interest in the property, awarding damages against Ray and the Grahams for fraud, and setting aside the foreclosure deed. Ray appeals from the verdict and judgment in Case No. A92A0757, and Atkins cross-appeals in Case No. A92A0758.

With the aid of money loaned by Atkins for a down payment, Ronald Graham purchased the property at issue in 1984. The property was conveyed by warranty deed from Austin to Ronald Graham with Graham giving Austin a note for $43,000 and a first priority debt deed over the property. In July 1987, pursuant to another loan to Ronald Graham, Atkins received a $25,000 promissory note from Graham and his wife, Donna, secured by a mortgage over the property second in priority to Austin's 1984 debt deed. The Grahams subsequently forged and recorded an instrument giving notice that the $25,000 mortgage had been paid. No payment had been made on it, and Atkins later recorded an instrument refuting the satisfaction notice. On July 31, 1987, Ronald Graham executed a warranty deed to the property to his brother, William Graham. This warranty deed was delivered to Ray, who later recorded it on May 31, 1989. On June 16, 1989, William Graham executed a warranty deed to the property to Atkins, who recorded it on June 19, 1989. The Grahams continued to use the property as their residence, and Ronald Graham continued to be responsible under and make the payments on the indebtedness evidenced by the 1984 note and debt deed. On June 29, 1989, Atkins sued the Grahams seeking a determination of her rights and interest in the property, or in the alternative to foreclose on the 1987 mortgage. Events occurring after the first suit was filed prompted Atkins to file a second suit on December 12, 1989, alleging that Ray had fraudulently conspired with the Grahams to destroy her interest in the property. On September 7, 1989, Austin assigned the 1984 note and debt deed to Ray for $12,700, the approximate amount remaining due on the note. After the Grahams failed to make the October and November payments on the 1984 note, Ray instituted non-judicial foreclosure proceedings under the terms of the debt deed, purchased the property at the public foreclosure sale for $14,183.20, and recorded the foreclosure deed to herself on December 5, 1989.

After a trial of both suits, the jury concluded: (1) that the promissory note from the Grahams to Atkins was a valid debt in the

amount of $25,000 plus interest; (2) that the warranty deeds from Ronald Graham to William Graham, and from William Graham to Atkins were valid instruments; (3) that notice was properly given by Ray in the foreclosure sale; (4) that the foreclosure deed be set aside because of fraud, and (5) that damages be awarded against Ray and the Grahams on Atkins' fraud claim.

1. First, we address the status of Atkins' interest in the property at the time of the foreclosure. The 1987 instrument from the Grahams to Atkins was sufficient to qualify as a mortgage creating a lien over the property, but conveying no title to Atkins. *Cherokee Ins. Co. v. Gravitt*, 187 Ga. App. 179, 182-183 (369 SE2d 779) (1988); OCGA § 44-14-30. Although the instrument was not in a typical mortgage form, no particular form is necessary to constitute a mortgage as long as the instrument clearly indicates, as this one does, the creation of a lien, and specifies the debt for which it is given, and the property upon which it is to take effect. OCGA § 44-14-31. Subsequently, on June 19, 1989, by virtue of a warranty deed from William Graham, Atkins obtained the equitable title to the property which William Graham had earlier obtained by warranty deed from Ronald Graham. Legal title remained with the holder of the 1984 first debt deed securing the unpaid note.

These transfers did not result in a merger of interests extinguishing the Atkins mortgage. "[U]nless the contrary intent is clearly shown, the acquisition of the equity of redemption by a mortgagee will not bring about a merger if the continued existence of the mortgage is necessary to protect against intervening liens. . . . [T]he doctrine of merger is designed primarily for the benefit of one who acquires an interest in property greater than he possessed in the first instance and will not be held to apply against his will to his disadvantage." (Punctuation and citations omitted.) *Barron Buick v. Kennesaw Fin. Co.*, 105 Ga. App. 451, 455 (124 SE2d 918) (1962); *Seaboard Air-Line R. Co. v. Holliday*, 165 Ga. 200, 204 (140 SE 507) (1927). Accordingly, Atkins not only held equitable title, but remained a creditor for purposes of determining whether there was a fraudulent conspiracy to extinguish her equitable interest, or to defraud her interest as a creditor as Atkins claims occurred under OCGA § 18-2-22 (2).

We find no merit in Ray's enumeration of error 8 claiming the trial court erred in failing to grant her motion for a directed verdict on the basis that Atkins' mortgage lien merged with her equitable interest.

2. Next, we address whether Ray's failure to give Atkins written statutory notice of the non-judicial foreclosure under the power of sale in the debt deed was a basis upon which to find fraud and set aside the foreclosure deed. The verdict and judgment reflect a deter-

mination that Ray gave the notice required in the foreclosure sale. In her cross-appeal in Case No. A92A0758, Atkins' sole claim is that the trial court erred by denying her motion for a directed verdict on the basis that the foreclosure deed be set aside for lack of proper notice.

In foreclosure proceedings instituted pursuant to OCGA § 44-14-160 et seq., only a debtor, as defined by statute, is entitled to receive any notice of the initiation of foreclosure other than by advertisement. *Breitzman v. Heritage*, 180 Ga. App. 171, 172 (348 SE2d 713) (1986). See OCGA §§ 44-14-162 and 44-14-162.1 through 44-14-162.4. "Those Code sections require that no sale of real estate on foreclosure shall be valid unless notice of the sale has been given the debtor; 'debtor' is defined as 'the grantor of the mortgage, security deed, or other lien contract. In the event the property encumbered by the mortgage, security deed, or lien contract has been transferred or conveyed by the original debtor, the term "debtor" shall mean the current owner of the property encumbered by the debt, if the identity of such owner has been made known to and acknowledged by the secured creditor prior to the time the secured creditor is required to give notice pursuant to Code Section 44-14-162.2.' OCGA § 44-14-162.1. This notice requirement, however, applies 'only to the exercise of a power of sale of property all or part of which is to be used as a dwelling place by the debtor at the time the mortgage, security deed, or lien contract is entered into.' OCGA § 44-14-162.3." *Dickens v. Calhoun First Nat. Bank*, 197 Ga. App. 517, 519 (398 SE2d 814) (1990).

As discussed earlier, Atkins retained a creditor's interest in the mortgage lien, and owned equitable title to the property. As holder of the mortgage lien, Atkins was entitled to notice only by advertisement. *Breitzman*, supra at 172. However, as one to whom equitable interest in the property was transferred, Atkins fit within the definition of debtor under OCGA § 44-14-162.1 as the current owner of equitable title to the encumbered property. Moreover, the evidence was sufficient to show that Atkins' identity as such was known to and acknowledged by Ray prior to the foreclosure as required by OCGA § 44-14-162.1. Nevertheless, under the plain language of OCGA § 44-14-162.3 (a), to establish the debtor's right to notice, the debtor must be one who used the property as a residence at the time he acquired the status of debtor as defined by OCGA § 44-14-162.1 Under OCGA § 44-14-162.2, notice "shall be given to the debtor," but this requirement applies under OCGA § 44-14-162.3 only to the sale of property "to be used as a dwelling place by the debtor at the time the mortgage, security deed or lien contract is entered into." The record shows that Atkins resided in Texas when she became the debtor by acquiring equitable ownership of the property by warranty deed. She never resided in the property, and testified she never intended to use the

property as her dwelling place. The statute, being in derogation of common law, must be strictly construed according to its terms. *Martin v. Fed. Land Bank*, 173 Ga. App. 142 (325 SE2d 787) (1984). Accordingly, the lack of notice to Atkins, other than by advertisement, provides no basis for the alleged fraud, or reason to set aside the foreclosure.[1]

For these reasons, we find no merit in Atkins' argument on cross-appeal in Case No. A92A0758. In light of the verdict and judgment finding notice was proper, Ray's enumeration 12 is rendered moot.

3. In Ray's first three enumerations of error she claims the evidence was insufficient to support the verdict and judgment setting aside the foreclosure deed for fraud. Similarly, in enumerations of error 9 and 10, Ray contends the trial court erred in denying her motion for directed verdict on the basis that she made no misrepresentations or otherwise engaged in an illegal conspiracy. Atkins contended, and the jury concluded, that Ray and the Grahams fraudulently conspired to foreclose the first debt deed and extinguish her mortgage lien and equity interest in the property. The theory was that the Grahams arranged for Ray to purchase and take an assignment of the 1984 note and debt deed for the designed purpose of foreclosing Atkins' interests. Generally, "it is not a fraud against the holder of a junior lien for the owner of the land to arrange with a third person for the purchase of an outstanding valid senior lien, for the purpose of thereafter advertising and selling the property thereunder in order to satisfy any actually unpaid debt secured by the senior lien, since in such a legitimate transaction the remedy of the junior lienholder is the payment or tender of the debt secured by the senior lien . . . ." *Sweat v. Arline*, 186 Ga. 460, 461 (197 SE 893) (1938). However, where the grantor has actually paid off the first security deed, but instead of cancelling it, arranged with a third person to obtain an assignment of the debt deed to foreclose and defeat the claim of a junior lienholder, this was found to be fraudulent. Id. at 461.

The evidence here is insufficient to establish that Ray partici-

---

[1] Ray sent statutory notice to Ronald Graham at the property address pursuant to OCGA § 44-14-162.2. Evidence showed that despite the transfer of his equitable interest, no assumption of the first priority debt took place, and he continued making the payments on the note. As he remained responsible for the note secured by the 1984 debt deed, and the Grahams continued to use the property as a residence, he arguably remained a debtor within the meaning of OCGA § 44-14-162.1 as grantor of the security deed and note. However, as Graham retained no legal or equitable interest in the property at the time of foreclosure, he was not a debtor entitled to notice under OCGA § 44-14-162.2 before being deprived of his interest in real property by foreclosure under power of sale. Whether he would occupy the status of debtor for purposes of dealing with the obligation on the debt in an action for a deficiency judgment under OCGA § 44-14-161 is a question not presented here. See *Breitzman*, supra at 172 (comparing the definition of debtor under OCGA § 11-9-504 (3) as addressed in *Branan v. Equico Lessors*, 255 Ga. 718 (342 SE2d 671) (1986)).

pated in a fraudulent conspiracy. The first debt deed was unpaid when Ray purchased it from Austin, and, as stated in Sweat, Atkins' remedy was to pay the senior lien in the foreclosure. Moreover, Atkins obtained equitable title to the property on June 19, 1989, and could have thereafter obtained fee simple unencumbered title by paying off the first debt deed prior to foreclosure. Assuming the evidence was sufficient to support Atkins' contention that a conspiracy was afoot to defeat her interests, this evidence alone creates no cause of action. "A conspiracy, although wrongful in motive, to effect what one has a legal right to accomplish is not actionable." *Higginbotham v. Harden*, 137 Ga. App. 143, 144 (223 SE2d 156) (1975). The gravamen of any civil conspiracy claim is not the alleged collusion, but tortious conduct committed against the plaintiff which proximately causes an injury. *McElroy v. Wilson*, 143 Ga. App. 893, 895 (240 SE2d 155) (1977). Atkins points to the fact that Ronald Graham conveyed Ray other real property worth $12,000 at the time Ray purchased the first debt deed for about the same amount; that the same lawyer who initially defended the Grahams in the first suit respecting the property also represented Ray in the foreclosure, and that after foreclosure the Grahams allowed the note to go into default. However, nothing precluded the defendants from taking any of these actions as a matter of right. For example, a debtor may act within his rights to make no further payments on a mortgage, and allow it to go into default to the detriment of subordinate interests. *Mixon v. Mixon*, 161 Ga. App. 645, 646-647 (288 SE2d 678) (1982). "Where damage results from an act which, if done by one alone, would not afford ground of action, the like act would not be rendered actionable because done by several in pursuance of a conspiracy." (Punctuation and citations omitted.) Id. at 647. Ray took no actions sufficient to form the basis of a conspiracy to defraud Atkins as a creditor under OCGA § 18-2-22 or otherwise. See *Caldwell v. Northwest Atlanta Bank*, 194 Ga. 370, 376-377 (21 SE2d 619) (1942). Accordingly, we find merit in Ray's enumerations of error 1, 2, 3, 9 and 10. The foreclosure deed was valid, and the judgment setting it aside and awarding damages for fraud against appellant must be reversed.

4. In her fourth enumeration of error, Ray claims the trial court erred by failing to grant her pre-trial motion to dismiss based on lack of venue. We find no error in the trial court's refusal to dismiss Ray on lack of venue prior to presentation of the evidence at trial. However, we note the evidence as adduced at trial reflects a lack of venue. Although the suit against Ray sought to have the foreclosure deed set aside, this is not a suit respecting title to land which must be brought in the county where the land is located. *Borden v. I. B. C. Corp.*, 220 Ga. 688, 690 (141 SE2d 449) (1965). As a general rule, a defendant must be sued in the county of his residence. Ga. Const. 1983, Art. VI,

Sec. II, Par. VI. However, when multiple defendants are sued as joint tortfeasors, venue is in any county where one of the alleged tortfeasors resides. *Smith v. United Ins. Co.*, 169 Ga. App. 751, 753 (315 SE2d 265) (1984). As a resident of Cobb County, venue over Ray was predicated on the allegation that she was a joint tortfeasor in a conspiracy with at least one resident of Catoosa County. Given the evidence presented and our findings that Ray was not a joint tortfeasor in the alleged conspiracy, it follows that venue was not established in Catoosa County.

5. Ray's claim in enumeration 5 that the trial court improperly denied her motion for summary judgment was rendered moot by the entry of a verdict and judgment based on evidence introduced at trial. *Seabolt v. Cincinnati Ins. Co.*, 199 Ga. App. 715, 716 (405 SE2d 757) (1991).

6. Based on our determination in Division 3 that the evidence was insufficient to set aside the foreclosure deed on the basis of fraud, we need not address Ray's additional claims in enumerations 6, 7, 11, and 13 regarding lack of tender, default, and actual damages, and that Ray relied on advice of counsel, nor do we address the remaining enumerations regarding jury instructions.

*Judgment reversed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED JUNE 30, 1992 —
RECONSIDERATION DENIED JULY 21, 1992 — ▇▇▇▇▇▇▇▇

*Hatcher, Johnson & Meaney, James A. Meaney III*, for appellant.
*Clifton M. Patty, Jr.*, for appellee.