**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 14, 2012**

# In the Court of Appeals of Georgia

A12A1098, A12A1099. RBC REAL ESTATE FINANCE, INC. v.
WINMARK HOMES, INC. et al. (two cases).

BRANCH, Judge.

These companion cases arise from a trial court's denial of a petition to confirm
the foreclosure sales of two parcels of land in Smyrna. Case No. A12A1098 concerns
14 unimproved residential lots owned by respondent Winmark Homes, Inc. and sold
on the courthouse steps for $750,000. Case No. A12A1099 concerns six townhouses
from the same subdivision, also owned by Winmark, and sold for $1,460,000. The
trial court refused to confirm the sale of the 14 lots on the grounds that the petitioning
creditor, RBC Real Estate Finance, Inc., had failed to provide notice as required by
OCGA § 44-14-162.2 and had failed to show that the properties were sold for fair
market value. The trial court refused to confirm the sale of the six townhouses on the

ground that the property description did not satisfy the requirements of OCGA § 9-13-140 (a). The trial court declined to order a resale in either case. We affirm in Case No. A12A1098 because there was some evidence at the confirmation hearing to support the trial court's determination that the 14 lots did not sell for fair market value. We reverse and remand with direction in Case No. A12A1099 because the sale satisfied applicable notice and advertisement requirements and because uncontradicted evidence showed that the six townhouses sold for at least fair market value.

In a confirmation of a foreclosure sale, "[t]he trial court sits as the trier of fact, and its findings of fact and conclusions of law have the effect of a jury verdict." (Footnote omitted.) *Wilson v. Prudential Industrial Props.*, 276 Ga. App. 180 (1) (622 SE2d 890) (2005). "[W]e do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment." (Punctuation and footnote omitted.) Id. at 181 (1). It follows from these premises that "we will not overturn a trial court's decision regarding confirmation of a foreclosure sale if there is any evidence to support the decision." (Footnote omitted.) Id. at 180-181 (1).

So viewed, the record shows that in 2007, Winmark executed two security deeds and a note for more than $3.8 million in exchange for loans from RBC for the

2

purpose of developing the Smyrna properties. David Jenkins and his development company guaranteed the note in writing. After Winmark defaulted on its loan payments, RBC notified Winmark, Jenkins and the development company that it was accelerating payment and that its efforts to obtain a deficiency judgment would culminate in foreclosure sales to be held on October 6, 2009, and December 1, 2009. On October 6, the six townhouses were sold to RBC, the only bidder, for $1,460,000; on December 1, the 14 lots were sold to RBC, the only bidder, for $750,000.

RBC petitioned the trial court to confirm both sales. At the hearing held on August 15, 2011, RBC's principal witness, a real-estate appraiser, testified in detail about the value of both properties. The appraiser valued the 14 lots at $840,000 (more than the price paid at foreclosure) under a sales-comparison approach and at $650,000 (less than the price paid at foreclosure) under a discounted-cash-flow approach. He then opined that the fair market value of the 14 lots was $750,000 – the price offered by RBC at the foreclosure sale. As to the six townhouses, the appraiser testified that the $1,460,000 paid by RBC for the six townhouses was "above market value," which he estimated to be $1,340,000. The respondents presented no evidence at the hearing.

Case No. A12A1098

On appeal from the trial court's denial of confirmation as to the 14 lots, RBC argues that (1) OCGA § 44-14-162.2 did not require notice of the sale to respondents

3

but, in any event, such notice was actually provided; and (2) the evidence as to fair market value did not support the denial of confirmation. We disagree.

1. OCGA § 44-14-161 provides:

(a) When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and *at the sale the real estate does not bring the amount of the debt* secured by the deed, mortgage, or contract, *no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall*, within 30 days after the sale, *report the sale to the judge of the superior court* of the county in which the land is located for confirmation and approval *and shall obtain an order of confirmation and approval thereon.*

(b) *The court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale.*

(c) The court shall direct that a notice of the hearing shall be given to the debtor at least five days prior thereto; and at the hearing *the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale*. The court may order a resale of the property for good cause shown.

(Emphasis supplied.)

As we have already noted, we will affirm a trial court's decision on whether to confirm a foreclosure sale if it is supported by any evidence. Here, the trial court heard a range of evidence as to the fair market value of the 14 lots, including that they were worth $840,000 rather than the $750,000 paid by RBC, and was entitled to credit some of this evidence, but not all of it, based on its determination of the credibility of the appraiser and the reliability of his methods of valuation. Because the evidence was thus sufficient to sustain the trial court's decision not to confirm the foreclosure sale on the ground that RBC had not paid fair market value, we affirm that decision as to the 14 lots. OCGA § 44-14-161 (b) (trial court "shall not confirm [a foreclosure] sale unless it is satisfied that the property so sold brought its true market value"); *Resolution Trust Corp. v. Morrow Auto Ctr.*, 216 Ga. App. 226, 227-229 (1), (2) (454 SE2d 138) (1995) (trial court did not abuse its discretion in refusing confirmation and denying a resale when a creditor had failed to prove that it had sold the foreclosed property for fair market value).

As to the 14 lots, then, we need not reach the question of notice, and RBC has not asserted that the trial court erred in refusing to order a resale. See OCGA § 44-14-161 (c) (trial court denying confirmation may order a resale "for good cause shown"). We therefore express no opinion on these issues.

5

RBC argues that the trial court erred when it denied confirmation of the foreclosure sale as to the six townhouses because (1) RBC paid at least fair market value for the property; (2) OCGA § 44-14-162.2 did not require notice of the sale to respondents but, in any event, such notice was actually provided; and (3) RBC complied with the advertising requirements of OCGA §§ 44-14-162 and 9-13-140, even though the advertisement for the sale listed seven residences rather than the six actually offered and sold.

2. As a preliminary matter, we note the trial court's acknowledgment that RBC paid at least fair market value for the six townhouses. This fact alone cannot save the proceedings, however, if either of the remaining grounds on which Winmark attacked the sale has merit. See *McPherson v. McPherson*, 307 Ga. App. 548, 550 (1) (705 SE2d 314) (2011) (an appellate court will affirm a trial court's decision "if it is right for any reason raised below") (citation omitted). We therefore begin by considering whether RBC met the foreclosure statutes' applicable notice and advertisement requirements.

3. The gravamen of Case No. A12A1099 is whether the trial court erred when it denied confirmation on the ground that RBC had not complied with the foreclosure statutes' notice requirements. OCGA § 44-14-162.2 provides in relevant part:

(a) Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor by the secured creditor no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor.

Before amendment effective July 1, 2012,[1] OCGA § 44-14-162.3 provided:

(a) The notice requirement of Code Section 44-14-162.2 shall apply only to the exercise of a power of sale of property all or part of which is to be used as a dwelling place by the debtor at the time the mortgage, security deed, or lien contract is entered into.

---

[1] See Ga. L. 1981, p. 834, § 2; Ga. L. 2002, p. 415, § 44; Ga. L. 2009, p. 614, § 2 (SB 141). For the 2012 amendments, see Ga. L. 2012, p. 1079, § 1 (SB 333). Neither party has asserted that the 2012 statute applies to this hearing, which was held in August 2011.

(b) No waiver or release of the notice requirement of Code Section 44-14-162.2 shall be valid when made in or contemporaneously with the security instrument containing the power of nonjudicial foreclosure sale; but, notwithstanding the requirements of Code Sections 44-14-162.1 [through] 44-14-162.4, a subsequent quitclaim deed in lieu of foreclosure shall be valid and effective as such.

Construing OCGA § 44-14-162.3 (a) prior to the 2012 amendment, which deleted that subsection of the statute, this Court held that "to establish [a] debtor's right to notice, the debtor must be one who used the property as a residence at the time he acquired the status of debtor." *Ray v. Atkins*, 205 Ga. App. 85, 88 (2) (421 SE2d 317) (1992). As a real estate development concern, Winmark did not argue or show that it occupied or planned to use any of the six townhouses at issue "as a dwelling place" at the time it executed the security deed in favor of RBC. See *Funderburke v. Kellet*, 257 Ga. 822, 824 (2) (364 SE2d 845) (1988) (in absence of evidence that a space used as either a florist shop or lawyer's office could be used as a dwelling place, a trial court was justified in concluding that the property was exempt from the notice requirements of OCGA § 44-14-162.2). The provisions of OCGA § 44-14-162.3 (b) have no application because the terms of subsection (a) independently exempt RBC from providing notice. It follows that, according to the terms of the version of OCGA

§ 44-14-162.3 in effect at the time of the proceedings below, the notice requirements of OCGA § 44-14-162.2 did not apply to the sale of the six townhouses. *Ray*, supra at 88-89 (natural person who never resided in foreclosed property and never intended to use it as her dwelling place was not entitled to actual notice under OCGA § 44-14-162.2); *Stepp v. Farm & Home Life*, 222 Ga. App. 257, 259 (3) (474 SE2d 108) (1996) (notice requirements of OCGA § 44-14-162.2 were not applicable to a company's foreclosure of unimproved lots). Accordingly, the trial court erred when it reached the contrary conclusion.

4. As the trial court noted, uncontradicted evidence at the confirmation hearing showed that RBC paid "at least" fair market price for the six townhouses. The trial court held, however, that the advertisement of the foreclosure sale of the six townhouses was "defective as a matter of law because it advertised the sale of seven" rather than six of them. On the basis of this perceived error, the trial court declined to reach the factual question whether the incorrect advertisement had chilled bidding at the sale, such that a fair market price was not obtained there.

Appellees have cited no authority for invalidating a foreclosure sale where the only error alleged is that the advertisement references an incorrect number of units for sale. OCGA § 44-14-162 (a) provides in relevant part that a foreclosure sale is not

9

valid "unless the sale shall be advertised and conducted at the time and place and in the usual manner of the sheriff's sales in the county in which such real estate or a part thereof is located." Under OCGA § 9-13-140 (a), judicial sales must be advertised according to certain requirements. Such an advertisement

> shall give a full and complete description of the property to be sold, making known the names of the plaintiff, the defendant, and any person who may be in the possession of the property. In the case of real property, such advertisement shall include the legal description of such real property and may include the street address of such real property, if available, but *provided that no foreclosure shall be invalidated by the failure to include a street address or by the insertion of an erroneous street address*.

(Emphasis supplied.) However, this Court has held that a defect in an advertisement "will prevent confirmation only if the factfinder determines [that] those defects 'chilled' bidding and caused an inadequate selling price." (Citations omitted.) *Southeast Timberlands v. Security Nat. Bank*, 220 Ga. App. 359, 360 (2) (469 SE2d 454) (1996). Likewise, in *Shantha v. West Ga. Nat. Bank*, 145 Ga. App. 712 (244 SE2d 643) (1978), we noted that "not every irregularity or deficiency [in the advertisement] will void the sale" and that a trial court's inquiry at a confirmation hearing should be limited to the value of the real estate on the date of sale. Id. at 712.

10

In making this determination, the trial court may examine the fairness of the technical procedures used, but "*only* for the purpose of making sure that the sale was not chilled and the price bid was in fact market value." (Emphasis supplied.) Id.; see also *Shingler v. Coastal Plain Production Credit Assn.*, 180 Ga. App. 539, 540 (2) (a) (349 SE2d 785) (1986) (an advertisement's omission of a consent order lifting a bankuptcy's automatic stay provisions produced only "a question of fact whether [the omission] affected a fair exercise of the power of sale and caused chilling of the sale price") (citation and punctuation omitted). Most recently, in *Dan Woodley Communities v. Suntrust Bank*, 310 Ga. App. 656 (714 SE2d 145) (2011), we affirmed a trial court's confirmation of a foreclosure sale despite the sale advertisement's inclusion of several condominium units already sold in the legal description of the property when a debtor did not contest that the remaining units were sold for fair market value. Id. at 657-659.

Under these authorities, we conclude that the trial court erred when it held that this advertisement's listing of seven rather than six townhouses for sale was defective because the description served as an adequate means of identifying the parcels sold and because there is no evidence that those defects chilled bidding or caused an inadequate selling price. In fact, the trial court's order noted that RBC sold the townhouses "for at least [their] true market value," thereby refuting any contention

11

that the advertisement's error actually chilled bidding on them. We therefore reverse the denial of confirmation as to the sale of the six townhouses and remand with direction that the trial court enter an order confirming the results of that sale.

*Judgment affirmed in Case No. A12A1098. Judgment reversed and case remanded with direction in Case No. A12A1099. Miller, P. J., and Ray, J., concur.*

12