**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 22, 2013**

# In the Court of Appeals of Georgia

A12A1804, A12A1806, A12A1807. WCI PROPERTIES, INC. et al.
v. COMMUNITY & SOUTHERN BANK (three cases).

BRANCH, Judge.

On appeal from a trial court's confirmation of a series of foreclosure sales, the debtor and appellant WCI Properties, Inc., argues that the trial court erred when it denied WCI's motions for a hearing about appellee's use of expert opinion testimony in a civil action under former OCGA § 24-9-67.1[1] as to the adequacy of three real estate appraisers' methods used to determine the value of the sold properties. WCI also asserts that the trial court erred when it confirmed the sales. We find no error and affirm.

---

[1] The statute has been recodified, with changes, as section 24-7-702 of the new Evidence Code (effective January 1, 2013).

Under former OCGA § 24-9-67.1 (b), experts qualified as such are authorized to give opinion testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue,"and if "(1) [t]he testimony is based upon sufficient facts or data which are or will be admitted into evidence at the hearing or trial; (2) [t]he testimony is the product of reliable principles and methods; and (3) [t]he witness has applied the principles and methods reliably to the facts of the case." Id.

Subsection (f) of the same statute provided that

It is the intent of the legislature that, in all civil cases, the courts of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states. Therefore, in interpreting and applying this Code section, the courts of this state may draw from the opinions of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Gen. Electric Co. v. Joiner*, 522 U.S. 136 (1997); *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999); and other cases in federal courts applying the standards announced by the United States Supreme Court in these cases.

Former OCGA § 24-9-67.1 (f). When a trial court conducts a hearing under former OCGA § 24-9-67.1, then, its task is to determine whether scientific or other expert testimony is "not only relevant, but reliable." *Daubert*, supra at 589 (II) (B); *Kumho*,

2

supra at 147 (II) (A) (applying *Daubert* to "all expert testimony"). Finally, questions concerning the admissibility of expert opinion "generally are committed to the sound discretion of the trial courts, and questions of the admissibility of expert opinions under [former] OCGA § 24-9-67.1 are no different." (Citations omitted.) *An v. Active Pest Control South*, 313 Ga. App. 110, 115 (720 SE2d 222) (2011).

> Whether an expert opinion ought to be admitted under [former] OCGA § 24-9-67.1 is a question that is especially fit for resolution by a trial court because it requires a consideration of the facts and data upon which the opinion is based, whether the opinion is a product of "reliable principles and methods," and whether the opinion was reached by a reliable application of those principles and methods to the facts of the case. See [former] OCGA § 24-9-67.1 (b).

Id.

The facts underlying these appeals are not in dispute. Between late 2007 and early 2009, Gilmer County Bank made a series of loans to WCI, a real estate development company owned by Robert Worley. The loans, which amounted to more than $5 million, were secured by a number of real estate parcels, including subdivision lots, finished and unfinished homes, and undeveloped acreage. In March 2010, Gilmer County Bank was taken over by the FDIC, which transferred that bank's assets to creditor and appellee Community & Southern Bank (C&S). After WCI defaulted, C&S foreclosed on the various real estate parcels, which were sold in 11 separate

transactions on April 5, 2011. C&S then petitioned the Gilmer County trial court to confirm the results of all 11 sales.

At the outset of the November 2011 confirmation hearing, WCI moved for a hearing to exclude three appraisers' testimony offered by C&S on the ground that former OCGA § 24-9-67.1 barred appraisals based only on foreclosure and other distressed sales. After delaying a ruling until after hearing testimony concerning the appraisers' qualifications, which were not in dispute, the trial court admitted their written appraisals of the sold properties over WCI's objection.[2]

The two parcels giving rise to Case No. A12A1804 sold at foreclosure for $116,000 and $99,000 respectively, or precisely the values submitted by the first appraiser a few weeks earlier. The first appraiser's report stated that she had used a sales-comparison rather than a cost approach[3] in valuing the two parcels because a

_____

[2] WCI's contention that the court did not rule on the motion is thus belied by the record.

[3] According to the evidence introduced at the confirmation hearing, a sales-comparison approach uses sales of comparable properties, as adjusted for differences according to price per square foot or per unit and "applied to the physical units of comparison derived from the comparable sale." A cost approach is "based upon the proposition that the informed purchaser would pay no more for the subject that the cost to produce a substitute property with equivalent utility," but is most applicable "when the property being appraised involves relatively new improvements that represent the highest and best use for the land, or when it is improved with relatively unique or specialized improvements for which there exist few sales or leases of comparable properties."

4

cost approach did not take account of "the effect of foreclosures in this market area," which had "driven down values."

The six single-family houses giving rise to Case No. A12A1806 sold at foreclosure at prices within the range of values previously submitted by the second appraiser: $62,500 to $182,500. The second appraiser testified that he used a sales-comparison rather than a cost approach because the "deferred maintenance and resulting external obsolescence" associated with such properties made the latter method defective as a value indicator for them. The second appraiser also noted that volatility in the capital and real estate markets made it "difficult to predict what may happen to real property values over time."

The third appraiser valued the 32 subdivision lots at issue in Case No. A12A1807 collectively at $270,000. The lots sold in two bundles for $160,312.50 and $109,687.50 respectively, the exact amount of the lump appraisal. The third appraiser used a bulk sales-comparison approach in reaching his valuation of the property, and explained at the confirmation hearing that bulk-sales analysis considered investor rather than consumer interest in the properties.

In three final orders confirming the 11 sales, the trial court noted that each of the properties sold on April 5, 2011 at "true market value." These appeals followed.

5

1. WCI first argues that the trial court erred both when it delayed ruling on the motion to exclude the appraisers' reports until after hearing testimony as to their qualifications and when it denied the motion. These contentions lack merit.

As an initial matter, because the trial court was sitting as the trier of fact in the confirmation proceeding, it did not abuse its discretion by postponing its ruling on WCI's motion for a *Daubert* hearing until after it had heard testimony concerning each expert's qualifications as such.

As for WCI's argument that the trial court erred in denying its motion for a *Daubert* hearing, it is similarly without merit in the unique context of a confirmation proceeding. OCGA § 44-14-161 (b) provides that "[t]he court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale." The confirmation statute "is in derogation of common law and must be strictly construed." (Citation omitted.) *129 Acres, Inc. v. Atlanta Business Bank*, 311 Ga. App. 462, 463 (716 SE2d 536) (2011).

A party seeking to confirm a non-judicial foreclosure sale is under no obligation to present an expert appraisal of the property. *McCain v. Galloway*, 267 Ga. App. 505, 507 (2) (600 SE2d 449) (2004). "'Direct testimony as to market value is in the nature

6

of opinion evidence. One need not be an expert or dealer . . . but may testify as to its value if he has an opportunity for forming an opinion.'" Id. at 507-508 (2), quoting OCGA §24-9-66. Of course, the opinions of experts as to the true market value of property are admissible, *Jotin Realty Co. v. Dept. of Transp.*, 174 Ga. App. 809, 811 (1) (331 SE2d 605) (1985), and provide sufficient evidence of value to support a trial court's order of confirmation. *Daniels Mortuary & Crematory v. Business Loan Ctr.*, 270 Ga. App. 875, 876 (1) (608 SE2d 545) (2004).

As this Court has recently held, moreover, a court sitting as the trier of fact in a confirmation hearing is not required to subject expert testimony as to value to a *Daubert* hearing. *Village at Lake Lanier v. State Bank & Trust Co.*, 314 Ga. App. 498, 501-502 (2) (b) (724 SE2d 806) (2012); *Blue Marlin Dev. v. Branch Banking & Trust Co.*, 302 Ga. App. 120, 123-124 (2) (690 SE2d 252) (2010) (appraiser's testimony as to value was properly admitted without a showing that he was competent to testify under former OCGA § 24-9-67.1).

It is undisputed that all three appraisers testifying at the confirmation hearing were certified as such in Georgia and had extensive experience in the valuation of property, and all three submitted appraisals that were subject to cross-examination. Moreover, "[t]he Legislature intended confirmation to be a speedy process," *Alliance*

7

*Partners*, supra at 515 (2), rather than a typical civil proceeding. For these reasons, the trial court did not abuse its discretion by not holding a *Daubert* hearing as to the appraisers appearing at this confirmation proceeding. *Village at Lake Lanier*, supra at 502 (2) (b) (trial court did not abuse its discretion in refusing to hold a *Daubert* hearing as to appraiser's credentials in a confirmation proceeding; any dispute went to the weight and credibility of the appraiser's testimony rather than its admissibility); *Blue Marlin*, supra at 124 (2). Compare *An*, supra at 116-117 (vacating a grant of summary judgment to defendant exterminator in plaintiff homeowner's action for professional negligence and breach of contract when the trial court granted the motion without disposing of a pending motion for a *Daubert* hearing concerning expert testimony as to the date termites had damaged the home).

2. As we have pointed out in Division 1, an expert's opinion as to a property's fair market value provides a sufficient evidentiary basis for a trial court's order of confirmation. *Daniels Mortuary*, supra at 876 (1).

> In a confirmation of a foreclosure sale, the trial court sits as the trier of fact, and its findings of fact and conclusions of law have the effect of a jury verdict. We do not determine witness credibility or weigh the evidence and we view the evidence in the light most favorable to the trial court's judgment. It follows from these premises that we will not

overturn a trial court's decision regarding confirmation of a foreclosure sale if there is any evidence to support the decision.

(Citations and punctuation omitted.) *RBC Real Estate Finance v. Winmark Homes*, 318 Ga. App. 507, 508 (736 SE2d 117) (2012). WCI's questions as to the means by which the appraisers reached their conclusions were raised on cross-examination below, and went to the weight rather than the admissibility of that evidence as to value. Because the trial court had some evidence on which to base its conclusion that the properties sold at true market value, we have no basis for overturning its order confirming the foreclosure sales. Id.; *Blue Marlin*, supra at 123-124 (3).

*Judgments affirmed. Miller, P. J., and Ray, J., concur.*