**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 10, 2014**

# In the Court of Appeals of Georgia

A13A1694. HARPER v. AMERIS BANK.                    DO-087

DOYLE, Presiding Judge.

Allen C. Harper, one of the personal guarantors of a promissory note secured by property comprised of approximately 110 lots in a subdivision known as Southbridge at Berwick Plantation, Phase III, near Savannah, Georgia, appeals the trial court's confirmation of the foreclosure of the property by Ameris Bank ("Ameris"). Harper argues (1) that the trial court erred by confirming the sale because (a) Ameris failed to file the post-sale deed under power within the time perscribed by OCGA § 44-14-160; and (b) Ameris failed to correctly advertise the sale; and (2) that the trial court abused its discretion by denying his motion to exclude Ameris' experts' testimony pursuant to former OCGA § 24-9-67.1.

The record establishes that Darby Bank & Trust ("Darby") issued a loan for $6,548,000 to SB Partners, LLC. The promissory note was secured by a deed to the property, as well as the personal guaranties of Charles K. Werk, Harper, and Roy S. Shiver, Jr.[1] SB Partners also entered into a Lot Purchase Agreement with D. R. Horton, Inc., under which D. R. Horton would purchase 40 lots - 20 lots during the year after closing the agreement for $59,000 per lot, and 20 thereafter for at least $62,540 per lot. After Darby failed in November 2010, and its assets were seized by the Federal Deposit Insurance Corporation, Ameris was appointed as receiver for Darby's assets, including the note and guaranties at issue.

Finding that SB Partners was in default on the note, Ameris foreclosed on the property in August 2011. Prior to the sale, Ameris procured two appraisals of the property, which valued the property at $2.1 million and $2.81 million. Ameris, however, purchased the property at the sale for $3,372,000, which consisted of a 20 percent increase of the highest appraisal. Thereafter, Ameris filed the instant confirmation petition.

At the hearing, Ameris presented the testimony of its appraisers, including Joel Crisler, who appraised the property in April 2011 and August 2011. Harper moved

[1] Only Harper is a party to the appeal.

2

to exclude the expert testimony on the ground that it violated former OCGA § 24-9-67.1 (b). Specifically, Harper argued that Crisler's conclusion that four of the lots were unbuildable due to flooding was impermissible testimony because he was unqualified to testify regarding this issue, and Crisler's failure to rely on the lot purchase agreement with D. R. Horton as evidence of value rendered unreliable his opinion as to the value of the property. The trial court, however, denied the motion; and thereafter, it entered an order confirming the sale.

1. Harper first argues that the trial court erred by confirming the sale because Ameris failed to file the deed under power within the time perscribed by OCGA § 44-14-160. We disagree.

OCGA § 44-14-160 states that

[w]ithin 90 days of a foreclosure sale, all deeds under power shall be recorded by the holder of a deed to secure debt or a mortgage with the clerk of the superior court of the county or counties in which the foreclosed property is located. The clerk shall write in the margin of the page where the deed to secure debt or mortgage foreclosed upon is recorded the word "foreclosed" and the deed book and page number on which is recorded the deed under power conveying the real property; provided, however, that, in counties where the clerk keeps the records affecting real estate on microfilm, the notation provided for in this Code section shall be made in the same manner in the index or other place

where the clerk records transfers and cancellations of deeds to secure debt.

This Court has not addressed whether this Code Section provides any remedy for a debtor; however, the plain language of the statute, as the trial court found below, provides for post-foreclosure procedures that would not affect the debtor in any way and instead would provide protection for future buyers.[2]

In any event, this Court has explained that "[a] confirmation proceeding is a limited statutory proceeding. . . ."[3] "Its purpose is to pass upon the notice, advertisement, and regularity of the sale and to re-insure that the property was sold for a fair value. It provides debtors with formidable protection against gross deficiency judgments."[4] The failure by Ameris to timely file the deed does not fall

---

[2] We note that the Legislature revised the statute in 2009 and had the opportunity to pass a version of the statute enacting fines for late filing under this code section; however, the measure failed. See Ga. L. 2009, p. 614, § 1/SB 141.

[3] *River Walk Farm, L.P. v. First Citizen Bank &c.*, 321 Ga. App. 173, 174-176 (1) (741 SE2d 165) (2013) (providing a summary of those claims applicable to confirmation hearings and those applicable to wrongful foreclosure actions).

[4] (Punctuation omitted.) *Howser Mill Homes, LLC v. Branch Banking &c.*, 318 Ga. App. 148, 151 (1) (733 SE2d 441) (2012) (citing OCGA § 44-14-161 (c) which states that the trial court shall pass upon the validity of the advertisement at the confirmation hearing).

within those categories, and thus, to the extent that any claim is available to a debtor under OCGA § 44-14-160, the appropriate vehicle would be a wrongful foreclosure action and not a confirmation proceeding.[5]

2. Harper also argues that the trial court erred by allowing Crisler[6] to testify as to the valuation of the property in violation of *Daubert v. Merrell Dow Pharmaceuticals*,[7] and former OCGA § 24-9-67.1 (b) because he was not qualified as an engineer or scientist who could testify regarding buildability of lots, and his opinion was unreliable as it failed to take into account the lot-purchase agreement when calculating the value of the property.

> [Q]uestions concerning the admissibility of expert opinion generally are committed to the sound discretion of the trial courts, and questions of the admissibility of expert opinions under [former] OCGA § 24-9-67.1 are no different. Whether an expert opinion ought to be admitted under [former] OCGA § 24-9-67.1 is a question that is especially fit for resolution by a trial court because it requires a

---

[5] Cf. id.

[6] Although Harper argues that Ameris' other expert testimony should have been excluded for similar reasons, we address only Crisler's testimony because the trial court relied on it when confirming the sale. For the same reasons, however, the trial court did not abuse its discretion by allowing Ameris' other expert to testify.

[7] 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993).

5

consideration of the facts and data upon which the opinion is based, whether the opinion is a product of reliable principles and methods, and whether the opinion was reached by a reliable application of those principles and methods to the facts of the case.[8]

In *WCI Properties, Inc. v. Community & Southern Bank*, this Court addressed a similar argument regarding the admission of an appraiser's testimony in the face of a *Daubert* motion. This Court explained that

[a] party seeking to confirm a nonjudicial foreclosure sale is under no obligation to present an expert appraisal of the property. Direct testimony as to market value is in the nature of opinion evidence. One need not be an expert or dealer but may testify as to its value if he has had an opportunity for forming an opinion. Of course, the opinions of experts as to the true market value of property are admissible, and provide sufficient evidence of value to support a trial court's order of confirmation. As this Court has recently held, moreover, a court sitting as the trier of fact in a confirmation hearing is not required to subject expert testimony as to value to a *Daubert* hearing.[9]

Here, Crisler prepared two valuation reports for Ameris, one in April 2011 and one in August 2011. Crisler contacted a D. R. Horton representative, who testified

---

[8] (Punctuation and citations omitted.) *WCI Properties, Inc. v. Community & Southern Bank*, 320 Ga. App. 671, 672 (740 SE2d 686) (2013).

[9] (Punctuation and citations omitted.) Id. at 674 (1).

that the company was not performing under the contract, as well as an engineer to survey the four questionable lots, and both individuals supported his conclusions, which were not offered to show that the lots were buildable or that the contract had to be followed, but rather to provide an opinion as to the value of the homes. Crisler is certified as an appraiser in Georgia, has extensive experience performing as such, and his conclusions as to the lot purchase agreement and buildability of certain lots and the effect of those conclusions on his final analysis of the value of the property was subject to thorough and sifting cross-examination.[10] The issues go to the weight, not the admissibility of Crisler's testimony,[11] and the trial court did not abuse its discretion by allowing it.

3. Finally, Harper contends that Ameris' failures in the advertisement required the trial court to deny confirmation of the sale. Specifically, Harper contends that Ameris' advertisement of the property incorrectly included two lots that later were released from the security deed prior to the sale.

---

[10] "[D]isputes as to an expert's credentials are properly explored through cross-examination at trial and go to the weight and credibility of the testimony, not its admissibility." *Village at Lake Lanier v. State Bank & Trust Co.*, 314 Ga. App. 498, 502 (2) (b) (724 SE2d 806) (2012). See *WCI Properties*, 320 Ga. App. at 675 (2).

[11] See id.

This Court addressed a similar argument in *Dan Woodley Communities, Inc. v. Suntrust Bank*,[12] in which this Court found that the legal description in the advertisement correctly stated the metes and bounds and the book and page number of the plat as well as a notation "that it was sold 'subject to the following items which may affect the title to said property,' including liens, special assessments, 'all restrictive covenants, easements, rights of way and any other matters of record superior to said Security Deed,'" which is the same language that appears in the advertisement here.[13] This Court also noted that "[t]he excepted units were identified on the courthouse steps at the time of the sale," which is also what occurred in this case.[14]

> Not every irregularity or deficiency in a foreclosure advertisement will void a sale. [Harper] has not shown [he] was harmed in any way by the inclusion of two unavailable lots in the foreclosure ad's property description. . . . As the trial court noted, [Harper] failed to show in any particular how the end result would have been different had [Ameris]

---

[12] 310 Ga. App. 656 (714 SE2d 145) (2011).

[13] Id. at 657.

[14] Id.

not included in the advertisement descriptions of the lots which had already been sold.[15]

Accordingly, the trial court did not err by granting the petition for confirmation over Harper's argument.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[15] (Footnotes omitted.) *Heritage Creek Dev. Corp. v. Colonial Bank*, 268 Ga. App. 369, 372 (1) (601 SE2d 842) (2004) (holding that an ad showing the incorrect plat book number did not void the sale because the error did not contribute to chilling the sale price or voiding the advertisement), citing *Oates v. Sea Island Bank*, 172 Ga. App. 178, 179 (2) (a) (322 SE2d 291) (1984).